Gary N. TENEYCK, Plaintiff–Appellant,

v.

**ROLLER HOCKEY COLORADO, LTD.**
**and Roller Hockey of Colorado GP,**
**Inc., Defendants–Appellees.**

No. 99CA1215.

Colorado Court of Appeals,
Div. IV.

Aug. 3, 2000.

Purvis, Gray & Gordon, LLP, John A. Purvis, Glen F. Gordon, Boulder, Colorado, for Plaintiff–Appellant.

Burg Simpson Eldredge & Hersh, P.C., Peter W. Burg, Diane Vaksdal Smith, David K. TeSelle, Englewood, Colorado, for Defendants–Appellees.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, § 5(3), and

Opinion by Judge STERNBERG.*

Plaintiff, Gary N. Teneyck, appeals the summary judgment entered in favor of defendants, Roller Hockey Colorado, Ltd., and Roller Hockey of Colorado GP, Inc. We reverse and remand with directions.

While attending a roller hockey game, plaintiff was seriously injured when he was struck by a puck that left the playing surface and flew into the spectator seating area. He subsequently initiated this action, and defendants moved for summary judgment, contending, *inter alia*, that the common law "no duty" rule precluded recovery for injuries suffered by spectators at sporting events. The trial court granted the motion, and this appeal followed.

Plaintiff contends that the trial court erred in recognizing the common law "no duty" rule as applicable to his claims, rather than applying § 13–21–115, C.R.S.1999 (the premises liability statute). We agree.

■ As adopted in some jurisdictions, the "no duty" rule applies to bar a plaintiff's claims for injuries suffered as a result of risks that are common, frequent, and expected during the activity in question. *See, e.g., Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546 (1978); *Pestalozzi v. Philadelphia Flyers, Ltd.,* 394 Pa.Super. 420, 576 A.2d 72 (1990); *Ingersoll v. Onondaga Hockey Club,* 245 A.D. 137, 281 N.Y.S. 505 (N.Y.App.Div.1935); *Modec v. City of Eveleth,* 224 Minn. 556, 29 N.W.2d 453 (1947).

However, even in jurisdictions following the rule, if the risk encountered by a plaintiff is not common, frequent, or expected, then the ordinary rules of negligence would apply. Conversely, courts in other jurisdictions have rejected the "no duty" rule and analyze all cases under traditional negligence principles. *See Riley v. Chicago Cougars Hockey Club, Inc.,* 100 Ill.App.3d 664, 56 Ill.Dec. 210, 427 N.E.2d 290 (Ill.App. 1 Dist.1981) and cases cited therein.

In certain limited circumstances pertaining to the responsibilities of property owners, Colorado has recognized a "no duty" rule.

§ 24–51–1105, C.R.S. 1999.

*See Bittle v. Brunetti,* 750 P.2d 49 (Colo. 1988) (property owner has no duty to remove snow and ice from publicly owned sidewalks adjacent to building); *Comfort v. Rocky Mountain Consultants, Inc.,* 773 P.2d 615 (Colo.App.1989) (private landowner adjacent to public roadway does not owe duty to persons leaving traveled portion of roadway).

Here, the trial court, in determining that Colorado recognizes the "no duty" rule, relied on *Pestalozzi v. Philadelphia Flyers Ltd., supra,* and cases from other jurisdictions holding that the rule applies to injuries caused by hockey pucks. The court also cited the Colorado Baseball Spectator Safety Act of 1993, § 13–21–120, C.R.S.1999 (the Baseball Act), as demonstrating the General Assembly's approval of the common law "no duty" rule. The court did not address plaintiff's argument that the premises liability statute should apply in this instance.

■ A ruling granting a motion for summary judgment is subject to *de novo* review. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995).

Although the issue of spectator injuries at hockey games has not been explicitly addressed in the Colorado statutes or case law, the General Assembly has enacted the premises liability statute, which provides the sole means of recovery for a plaintiff against a landowner. *See* § 13–21–115(2), C.R.S.1999 ("landowner shall be liable *only* as provided in subsection (3)" of the statute) (emphasis added); *Thornbury v. Allen,* 991 P.2d 335 (Colo.App.1999) (plaintiff may recover against landowner only pursuant to premises liability statute and not under any other theory of negligence, general or otherwise). *See also Calvert v. Aspen Skiing Co.,* 700 F.Supp. 520 (D.Colo.1988) (premises liability statute abrogates all common law claims for negligence).

■ The premises liability statute has as its purpose "to define the instances when liability will be imposed [on landowners] in the manner most consistent with the policies set forth in [subsection 1.5]." Section 13–21–115(1.5)(e), C.R.S.1999. A landowner's duty is, therefore, statutory and non-delegable, so long as possession of the property is maintained. *See Jules v. Embassy Properties, Inc.,* 905 P.2d 13 (Colo.App.1995); *see also* § 13–21–115(1), C.R.S.1999 (defining "landowner").

Under the statute, an invitee may recover for damages "caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." Section 13–21–115(3)(c)(I), C.R.S.1999. An "invitee" is defined in the statute as:

> a person who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain.

Section 13–21–115(5)(c), C.R.S.1999.

The General Assembly has carved out exceptions to landowner liability in certain instances. *See* § 33–44–101, et seq., C.R.S. 1999, (the Ski Safety Act of 1979); § 13–21–119, C.R.S.1999 (liability exemption for equine and llama activities); § 13–21–120, C.R.S.1999 (the Baseball Act).

Section 13–21–120(2), C.R.S.1999, of the Baseball Act contains the following legislative statement:

> The general assembly recognizes that persons who attend professional baseball games may incur injuries as a result of the risks involved in being a spectator at such baseball games. However, the general assembly also finds that attendance at such professional baseball games provides a wholesome and healthy family activity which should be encouraged. The general assembly further finds that the state will derive economic benefit from spectators attending professional baseball games. It is therefore the intent of the general assembly to encourage attendance at professional baseball games. Limiting the civil liability of those who own professional baseball teams and those who own stadiums where professional baseball games are

played will help contain costs, keeping ticket prices more affordable.

The Baseball Act further provides:

Spectators of professional baseball games are presumed to have knowledge of and to assume the inherent risks of observing professional baseball games, insofar as those risks are obvious and necessary. These risks include, but are not limited to, injuries which result from being struck by a baseball or a baseball bat.

Section 13–21–120(4)(a), C.R.S.1999.

By enacting this legislation, the General Assembly has expressly determined that baseball spectators assume the inherent risks of attendance at professional baseball games. However, the applicability of that act is limited to professional baseball games; it does not provide a blanket exception from liability for all sports that pose the same inherent risks as professional baseball, *e.g.*, amateur baseball or softball games.

Similarly, the General Assembly has expressly recognized the inherent risks of skiing, *see* § 33–44–103(3.5), C.R.S.1999, and equine and llama activity. *See* § 13–21–119(2)(f), C.R.S.1999.

■ In light of these statutes, it is apparent that, had the General Assembly wished to provide an exemption from civil liability for other spectator sports or activities, it could have done so. *See* 745 Ill. Comp. Stat. Ann. 52/1, et seq. (West 1998) (Illinois Hockey Facility Liability Act); Utah Code Ann. § 78–27–62 (1998) (Utah limitation on liability of hockey facilities). And, any adoption of such an exemption that would apply to the circumstances here is a matter within the purview of that body, not this court. *See Bittle v. Brunetti, supra* (determination of duty where common law imposes none is matter more appropriately addressed by the General Assembly).

Because the General Assembly has undertaken expressly to define the scope of landowner liability through its enactment of the premises liability statute, we conclude that act provides the framework for the analysis of plaintiff's claims here. *Cf. Bayer v. Crested Butte Mountain Resort, Inc.,* 960 P.2d 70 (Colo.1998) (abrogation of a common law

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, § 5(3), and

right of action will not be inferred absent clear legislative intent).

Therefore, the judgment is reversed and the cause is remanded for further proceedings on plaintiff's complaint, with directions that it be evaluated pursuant to the standards set forth in the premises liability statute.

Judge ROTHENBERG and Judge TURSI **, JJ., concur.