Grafton
No. 99-003

### JACK KELLNER, INDIVIDUALLY AND AS FATHER AND NEXT FRIEND OF MENDY KELLNER

v.

### IRENE LOWNEY

August 18, 2000

*Douglas, Robinson, Leonard & Garvey, P.C.*, of Concord (*Charles G. Douglas, III* on the brief and orally), for the plaintiff.

*McNeill & Taylor, P.A.*, of Dover (*Robert J. Gallo* and *Lynne M. Dennis* on the brief, and *Mr. Gallo* orally), for the defendant.

MCHUGH, J. Jack Kellner, the plaintiff in this negligence action, appeals from a grant of summary judgment in the Superior Court (*Fitzgerald*, J.) in favor of the defendant, Irene Lowney. We reverse and remand.

The plaintiff brought a lawsuit against the defendant as a result of the serious injuries suffered by his son, five-year-old Mendy Kellner, when he was struck by a motor vehicle on Route 302, a public highway in Bethlehem. The defendant owned and operated a motel located on both sides of Route 302 in the area where the boy was struck. The Kellner family, residents of New York, were guests at the defendant's motel when the accident occurred. The trial court ruled that the defendant, as owner and proprietor of the motel, owed no duty to the plaintiff to warn or otherwise protect him or his son from the hazards inherent in the public highway adjacent to her property. It concluded that a property owner could be liable only for risks posed by conditions actually on the premises.

The relevant facts are as follows. In 1993, the defendant operated the Baker Brook Lodges and Motel, which consisted of a series of buildings divided by Route 302. Because of this layout, motel guests desiring to use all of its facilities had to cross the highway. Somewhat unique to her business, the defendant rented motel units to many families of the Orthodox Jewish faith, particularly during the months of July and August. Management of the motel was sensitive to the needs of these guests. For example, the motel game room, which is located on the north side of Route 302, was made available Saturday mornings for Sabbath services in the summer. These religious services were attended by motel guests.

On Saturday, July 10, 1993, the plaintiff and his family were staying at the motel in living quarters located on the south side of Route 302. They were among many motel guests who attended religious services in the game room that morning. Although the defendant did not sponsor or organize these services, she did arrange for the transporting of the Torah to the motel that morning

for use in the worship. At the conclusion of the services, the plaintiff tried to locate his family members among the group of people who had dispersed to an area near Route 302. At some point his son darted into the highway where he was hit by a passing motor vehicle.

Given (1) the configuration of the defendant's motel, which is located on both sides of Route 302, (2) the fact that many guests during the summer were members of the Orthodox Jewish faith, and (3) the defendant's decision to permit Sabbath services on the motel grounds on one side of the highway knowing that some of her motel units were located on the other side, the plaintiff alleges that the defendant had a duty to protect guests from the known danger of crossing the public highway at the conclusion of these religious services.

The plaintiff argues that the defendant breached that duty by failing to take proper precautions to ensure the safe passage of guests across Route 302 following religious services. The defendant counters that an innkeeper's duty to protect guests from unreasonable risk of harm does not extend beyond the boundaries of the premises. She argues she had no control over the State highway where the injury occurred, or the car which struck the boy.

"When reviewing a motion for summary judgment, the court must consider the evidence in the light most favorable to the party opposing the motion and take all reasonable inferences from the evidence in that party's favor." *High Country Assocs. v. N.H. Ins. Co.*, 139 N.H. 39, 41, 648 A.2d 474, 476 (1994). "[W]hether a defendant's conduct creates a sufficiently foreseeable risk of harm to others sufficient to charge the defendant with a duty to avoid such conduct is a question of law." *Manchenton v. Auto Leasing Corp.*, 135 N.H. 298, 304, 605 A.2d 208, 213 (1992).

In large part New Hampshire's legal concepts of duty and foreseeability derive from Chief Justice Cardozo's majority opinion in *Palsgraf v. Long Island Railroad Company*, 162 N.E. 99 (N.Y. 1928). *See Goodwin v. James*, 134 N.H. 579, 583-84, 595 A.2d 504, 507 (1991). With respect to landowners, we have long held that as a general rule all owners and occupiers of land are governed by the test of reasonable care under all of the circumstances in the maintenance and operation of their property. *Ouellette v. Blanchard*, 116 N.H. 552, 557, 364 A.2d 631, 634 (1976); *see also Sargent v. Ross*, 113 N.H. 388, 397-99, 308 A.2d 528, 534 (1973). We have never ruled that as a matter of law, if the injury occurs outside the boundaries of one's property, an owner can never be liable. While such a bright line would be easy to draw and enforce, it would violate the general

principles of negligence law embodied in cases such as *Palsgraf* and *Ouellette*.

■ Under our law, in order for a duty to exist on the part of a landowner, it must be foreseeable that an injury might occur as a result of the landowner's actions or inactions. "Generally, persons will not be found negligent if they could not reasonably foresee that their conduct would result in an injury to another or if their conduct was reasonable in light of the anticipated risks. Thus duty and foreseeability are inextricably bound together." *Manchenton*, 135 N.H. at 304, 605 A.2d at 213 (citation, quotations, and brackets omitted); *see Paquette v. Joyce*, 117 N.H. 832, 837, 379 A.2d 207, 210 (1977).

In this case the question becomes, could the defendant anticipate a risk of injury to those guests who were required to cross Route 302 to return to their living quarters after attending religious services? We answer that question in the affirmative.

A special relationship exists between an innkeeper and a guest. *Barnes v. N.H. Karting Assoc.*, 128 N.H. 102, 106, 509 A.2d 151, 154 (1986).

> In some cases, a party's actions give rise to a duty. A party who does not otherwise have a duty, but who voluntarily renders services for another, has been held to a duty of reasonable care in acting. In other cases, a duty to act exists based on a special relationship between two parties. In either case, the scope of the duty imposed is limited by what risks, if any, are reasonably foreseeable.

*Walls v. Oxford Management Co.*, 137 N.H. 653, 656, 633 A.2d 103, 105 (1993) (citations and emphasis omitted).

In this case, the defendant was aware of the traffic conditions on Route 302. She knew that on Saturday mornings during the summer months, a large number of her Orthodox Jewish guests would likely cross the highway after religious services were completed. She also knew that families with small children would participate in these services. The risk of injury to young children crossing the road is entirely foreseeable under these circumstances. Thus, because a reasonable person should have foreseen the risk created by permitting religious services on her property, the defendant had a duty to take reasonable steps to alleviate that risk.

In granting summary judgment, the trial court relied upon *Chouinard v. New Hampshire Speedway*, 829 F. Supp. 495 (D.N.H. 1993). In *Chouinard*, the plaintiff had purchased tickets to an automobile race at the defendant's racetrack. She was instructed to

pick them up on race day at a ticket booth located on the defendant's property. She initially intended to park her vehicle on the side of the public highway on which the ticket booth was located. Because she was unable to park on that side of the road due to temporary barriers that had been erected for the race traffic, the plaintiff parked on the other side. While crossing the highway to get to the ticket booth, she was struck by a motor vehicle operated by someone unrelated to the defendant.

The plaintiff alleged that the racetrack owner owed a duty to protect her from hazards at or near the racetrack created by increased traffic on race day. The federal district court dismissed the plaintiff's lawsuit concluding that

> in order to impose a duty of care on a landowner to the benefit of users of an adjacent public way, there has to be some kind of action taken by defendant landowner which creates an unreasonable risk of harm to the public-way users. The present record does not reflect any action taken by the speedway that amounts to the creation of an artificial condition on its property.

*Id.* at 501.

As the plaintiff in the case at bar points out, there are two important factual differences between the case at bar and *Chouinard*: first, the special relationship of innkeeper-guest was not present in *Chouinard*; second, the public highway in that case was not bordered on both sides by the defendant's property. Using the criteria set forth in *Chouinard*, a fact finder could determine that by choosing to operate her motel on both sides of Route 302 and by permitting religious services to be held on the opposite side of the highway from where her guests' living quarters were located, the defendant created an artificial and potentially hazardous condition on her property which gave rise to a duty of care.

We do not hold that the defendant had a duty to control in any way the public highway itself. The duty found herein requires the defendant to control the use and activities on her property so that her guests are not unreasonably exposed to a risk of injury. Unlike the plaintiff in *Chouinard*, the Kellners were required to cross the public highway in order to reach their living quarters at the conclusion of the religious service.

The trial court also relied on the following: "A carrier is under no duty to one who has left the vehicle and ceased to be a passenger, nor is an innkeeper under a duty to a guest who is injured or endangered while he is away from the premises. Nor is a possessor

of land under any such duty to one who has ceased to be an invitee."
RESTATEMENT (SECOND) OF TORTS § 314A comment c at 119
(1965). Mendy Kellner, however, continued to be a guest of the
defendant at the time of the accident. Although he was on the public
highway when he was injured, he and his family were intending to
cross from one portion of the defendant's property to another.
Because of the configuration of the motel, it was foreseeable that
this injury would occur when it did.

Other courts have also ruled that using the test of foreseeability,
a landowner's liability may extend beyond the borders of his or her
property. See Banks v. Hyatt Corp., 722 F.2d 214, 225-26 (5th Cir.
1984); Warrington v. Bird, 499 A.2d 1026, 1029-30 (N.J. Super. Ct.
App. Div. 1985); Gunlock v. Gill Hotels Co. Inc., 622 So. 2d 163, 164
(Fla. Dist. Ct. App. 1993); Mulraney v. Auletto's Catering, 680 A.2d
793, 795 (N.J. Super. Ct. App. Div. 1996). "A landowner's duty of
care to avoid exposing others to a risk of injury is not limited to
injuries that occur on premises owned or controlled by the land-
owner. Rather, the duty of care encompasses a duty to avoid
exposing persons to risks of injury that occur offsite if the
landowner's property is maintained in such a manner as to expose
persons to an unreasonable risk of injury offsite." Barnes v. Black,
84 Cal. Rptr. 2d 634, 637 (Ct. App. 1999).

█ In summary, the trial court's ruling that a property owner
owes no duty as a matter of law to an injured invitee because the
owner has neither control of the premises on which the injury
occurred nor of the instrumentality causing the injury, was error
under the unique facts in this case. A duty may be present if the
landowner's acts or omissions create a sufficiently foreseeable risk
of harm in such a case, where it can be found that the landowner did
not use reasonable care in the maintenance and operation of his or
her property.

Accordingly, we reverse and remand for further proceedings
consistent with this opinion.

*Reversed and remanded.*

BROCK, C.J., and HORTON and BRODERICK, JJ., did not sit;
DALIANIS, J., was recused and did not sit; GRAY, J., retired superior
court justice, and MCHUGH and GROFF, JJ., superior court justices,
sat by special assignment pursuant to RSA 490:3; all who sat
concurred.

Justices who did not sit did not, following oral argument, partic-
ipate in discussions, decisions, votes, or preparation of the opinion
in any way.